*In re* SHANE L. GRIMES, Asserted to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Shane L. Grimes, Respondent-Appellant).

Third District   No. 3—89—0198

Opinion filed January 16, 1990.

William E. Coffin, of Guardianship & Advocacy Commission, of Elgin, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PER CURIAM: The trial court found that the respondent, Shane L. Grimes, was a person subject to involuntary admission and ordered him hospitalized in the Department of Mental Health and Developmental Disabilities (Ill. Rev. Stat. 1987, ch. 91½, pars. 1—119, 3—600). He appeals. We affirm.

At the hearing on the State's petition to commit the respondent, psychiatrist Shirley Eyman testified that the respondent was admitted to the Zeller Mental Health Center on February 23, 1989. Dr. Eyman stated that at the time of his admission the respondent had fresh burns on his hands. The burns had apparently been sustained when he started a fire in his apartment. She stated that the respondent appeared disoriented and expressed loose associations, paranoid ideations, and inappropriate responses. He was diagnosed as having chronic disorganized schizophrenia.

Dr. Eyman testified that the respondent would be unable to meet his own basic needs. She further stated that he was dangerous to himself and to others due to his history of setting fires. Eyman noted that the respondent had made some progress since his admission, but stated that his judgment remained somewhat limited. She also stated that he had been admitted to Zeller on several prior occasions.

The trial court asked the respondent whether he wished to be released. The respondent stated that he would like to leave if they would return his "stuff." The State's Attorney explained that the respondent believed that the staff at Zeller had stolen a platinum spoon from him. Based upon the evidence presented, the trial court found that the respondent was mentally ill and that because of his illness he could reasonably be expected to inflict serious harm upon himself or

122

another in the near future.

■ On appeal, the respondent first argues that he was deprived of his right to counsel. We note that the appellant has the duty of presenting a complete record on appeal so that the reviewing court will be fully informed regarding the issues in the case. (*In re Marriage of Macaluso* (1982), 110 Ill. App. 3d 838, 443 N.E.2d 1.) Any doubts arising from the incompleteness of the record must be resolved against the appellant. *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958.

■ Section 3—805 of the Mental Health and Developmental Disabilities Code (the Code) (Ill. Rev. Stat. 1987, ch. 91½, par. 3—805) provides in relevant part:

"Every respondent alleged to be subject to involuntary admission shall be represented by counsel. If the respondent is indigent or an appearance has not been entered on his behalf at the time the matter is set for hearing, the court shall appoint counsel for him."

The appointment of counsel must be made at the time the hearing is set and not merely at the hearing itself. *In re Walters* (1989), 183 Ill. App. 3d 452, 539 N.E.2d 454.

■ In the instant case, it is not clear from the record when counsel was appointed for the respondent. We note, however, that he was represented by counsel at the hearing, and the record indicates that the respondent conferred with his attorney prior to that hearing. Because the record is silent as to when counsel was appointed for the respondent, we must presume that counsel was appointed at the time the hearing date was set, as is required by the Code.

■ We next note, as does the State, that the respondent appears to raise an ineffective assistance of counsel issue in his brief. However, in his reply brief the respondent criticizes the State for "skirt[ing] the issue of statutory noncompliance by addressing it as unfounded ineffective assistance of counsel." Despite this criticism, the respondent goes on to rebut the State's position on the ineffective assistance of counsel argument. Accordingly, this court cannot determine whether the respondent intended to raise this as an issue. We have therefore examined the respondent's attorney's representation during the involuntary commitment hearing. We find that it was adequate.

■ The respondent further argues that the order of the trial court is void because it failed to state the factual findings and legal conclusions for its decision. Section 3—816(a) of the Code (Ill. Rev. Stat. 1987, ch. 91½, par. 3—816(a)) provides in relevant part:

"(a) Every final order entered by the court under this Act shall be in writing and shall be accompanied by a statement on the record of the court's findings of fact and conclusions of law. A copy of such order shall be promptly given to the patient or his attorney and to the facility director of the facility or alternative treatment to which the patient is admitted or to the person in whose care and custody the patient is placed."

■ In the instant case, the trial court stated on the record: "Well, on the basis of the evidence, the court finds that [the respondent] is mentally ill and because of his illness, is reasonably expected to inflict serious physical harm upon himself or another in the near future." Therefore, contrary to the respondent's claim, the trial court did state its factual findings and conclusions on the record and thus satisfied the requirements of section 3—816(a).

■ Next, the respondent argues that he did not receive a copy of the involuntary commitment order. Section 3—816(a) provides, however, that a copy of the order shall be given to the patient or his attorney. Although the respondent contends that he did not receive a copy of the order, the record does not indicate whether the respondent's attorney received a copy. Therefore, we must presume that the trial court complied with the statute and that the respondent's attorney received a copy of the trial court's order. *People ex rel. Causley v. Jackson* (1988), 171 Ill. App. 3d 464, 527 N.E.2d 16.

■ The respondent also argues that the trial court failed to specify the duration of the treatment period. Section 3—813(a) of the Code (Ill. Rev. Stat. 1987, ch. 91½, par. 3—813(a)) provides in relevant part:

"(a) An initial order for hospitalization or alternative treatment shall be for a period not to exceed 60 days."

Here, the trial court's order did not state that the respondent's hospitalization was limited to 60 days. We note, however, that under the statute the court is not required to make such a finding. Further, we note that the order itself directs the reader to the information printed on the reverse side, which states that an order for admission is initially valid for no more than 60 days. Accordingly, we find that the trial court's order complied with the statute.

■ The respondent further argues that he was not served with a copy of the petition within 12 hours of his admission, as required under section 3—205 of the Code (Ill. Rev. Stat. 1987, ch. 91½, par. 3—205). We find no merit to this argument. The record shows that the reverse side of the petition for involuntary admission, which stated that a copy of the petition had been given to the respondent within 12

hours of his admission, was signed by Diane Ingrasseole, a nursing supervisor at Zeller.

Lastly, the respondent argues that the evidence did not clearly and convincingly establish that he was subject to involuntary admission. We note that in an involuntary commitment proceeding, the petitioner must prove the allegations of the complaint by clear and convincing evidence. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) Mere proof of the presence of mental illness is not, by itself, sufficient to establish that a person needs mental treatment. (*In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153.) However, the State is not required to prove that the respondent is a definite danger to himself or society. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) Thus, courts do not have to wait until someone is harmed before ordering the hospitalization of a respondent. (*In re Haber* (1979), 78 Ill. App. 3d 1120, 398 N.E.2d 121.) Further, a reviewing court will uphold a commitment order where there is a reasonable expectation that the respondent will engage in dangerous conduct. *In re Powell* (1980), 85 Ill. App. 3d 877, 407 N.E.2d 658.

In the instant case, the uncontradicted testimony of Dr. Eyman showed that the respondent was suffering from chronic disorganized schizophrenia. At the time of his admission, the respondent had fresh burns on his hands, which he had sustained after starting a fire in his apartment. Dr. Eyman further testified that the defendant presented a danger to himself and to others because of his history of setting fires. She estimated that it would be several months before the respondent would get better. She also noted that the respondent had refused to voluntarily hospitalize himself. Based upon this evidence, we find that the trial court properly concluded that the respondent was mentally ill and that because of his illness he could reasonably be expected to inflict serious physical harm upon himself or another in the near future.

The decision of the circuit court of Peoria County is affirmed.

Affirmed.