THE DEPARTMENT OF PUBLIC AID *ex rel.* KAREN ANN EVANS, Petitioner-Appellant, v. ARTHUR JOE LIVELY, Respondent-Appellee.

Fifth District   No. 5—91—0359

Opinion filed June 30, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Tanya Solov, Assistant Attorney General, of Chicago, of counsel), for appellant.

Gene A. Turk, Jr., of Womack & Associates, Chartered, of Carbondale, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The Department of Public Aid *ex rel.* Karen Ann Evans (hereinafter petitioner) appeals from orders entered by the circuit court of Jackson County on March 15, 1991, and April 15, 1991, respectively, granting the motion to dismiss filed by respondent, Arthur Joe Lively, and denying petitioner's motion for rehearing. For reasons stated as follows, we reverse and remand.

The record indicates that the State of Wisconsin filed a petition for establishment of paternity, child support and medical coverage against respondent on behalf of Karen Ann Evans on February 23, 1990, in Fond Du Lac County, Wisconsin. The petition represented that Evans, who resides in Fond Du Lac County, is the mother and custodian of Jason Kyle Hassen, who was born on May 5, 1977. The petition further represented that respondent was the putative father of Jason, that Evans and respondent were never married, and that respondent resided in Jackson County, Illinois. Evans made an assignment of rights and gave authority to the Fond Du Lac, Wisconsin, Family Support Division to collect support for Jason.

The paternity affidavit made by Evans and attached to the petition represented that Jason was conceived between July 8, 1976, and September 6, 1976, in Illinois and born in Illinois, and that Evans did not have sexual intercourse with any man other than respondent during the time the child was conceived. Evans also represented that respondent wanted to get married when he found out she was pregnant, and that Jason physically resembles respondent in that he has straight blond hair and is tall. Evans stated that birth and medical expenses were paid by medical assistance from the State of Illinois. Evans provided in her affidavit the names of three witnesses to the relationship in 1977 between Evans and respondent.

The Department of Public Aid filed a paternity action against respondent in the circuit court of Jackson County, Illinois, pursuant to the Revised Uniform Reciprocal Enforcement of Support Act (Ill. Rev. Stat. 1989, ch. 40, par. 1201 *et seq.*), on September 20, 1990. Respondent filed a motion to dismiss the petition on November 14, 1990, stating therein the following grounds for dismissal pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619):

"1. The present action was not commenced within the time limited by prior law, and the new limitations period should not be applied retroactively.

2. The claim is barred because enforcement of the underlying statute would violate the respondent's right to due process under the law."

Following submission of memoranda of law and oral argument on March 15, 1991, the circuit court of Jackson County found that there was a conflict between well-established case law, which holds that the completed bar of a statute of limitations is a vested right which cannot be destroyed by subsequent legislation, and the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1989, ch. 40, par. 2501 *et seq.*). Based on this conflict, the court granted respondent's motion to dismiss, holding that the bar of the statute of limitations in effect when the child was born was vested and thus the statute of limitations of the present act could not retroactively be employed to validate this claim.

■ As a preliminary matter, respondent argues that this court is without jurisdiction to hear the petitioner's appeal because the notice of appeal did not comply with the time limits stated in Supreme Court Rule 303 (134 Ill. 2d R. 303). We note that respondent raised this exact issue in a motion to dismiss appeal filed with this court on March 11, 1992, and that we denied respondent's motion by order dated April 1, 1992.

Respondent contends that the trial court required a written order when it granted respondent's motion to dismiss on March 15, 1991, and, accordingly, that the petitioner's notice of appeal, which preceded the entry of the written order in this cause, was premature. We have reviewed the report of proceedings from the March 15, 1991, hearing and disagree that a written order was mandated by the court. Moreover, Supreme Court Rule 272 states that if the judge requires submission of a form of written judgment to be signed by the judge, the clerk shall make notation to that effect, and that if no such written judgment is to be filed, judgment is entered at the time it is entered of record. (134 Ill. 2d R. 272.) We note that the March 15, 1991, docket entry in the common law record prepared by the clerk states, "argument was heard and motion to dismiss granted," and did not specify that one of the parties was to prepare a written order.

We also note that petitioner filed a motion to reconsider which was denied by the trial court on April 15, 1991, and that petitioner's notice of appeal on May 15, 1991, from the March 15, 1991,

and April 15, 1991, orders of the court is timely under Rule 303. This was the basis for our denial of the motion to dismiss appeal and our reiteration now that this court has jurisdiction of petitioner's appeal in the instant case.

Regarding the merits of petitioner's appeal, we note that section 8 of the Illinois Parentage Act of 1984 provides, in pertinent part, that actions to determine a father-and-child relationship brought by or on behalf of a child are not barred until two years after the child reaches the age of majority or, if brought on behalf of the child by a public agency, are not barred until two years after the agency has ceased to provide assistance to the child. (See Ill. Rev. Stat. 1989, ch. 40, par. 2508.) In May 1977 when Jason was born, the prior Paternity Act provided in pertinent part that institution of a paternity action for a child born out of wedlock and to establish and enforce liability for the child's support, maintenance, education, and welfare could not be brought after the expiration of two years from the birth of the child. (See Ill. Rev. Stat. 1977, ch. 40, par. 1354.) Thus, under prior law, a paternity action would have been barred after May 5, 1979. However, if the limitations period stated in the Illinois Parentage Act of 1984 is applicable, a paternity action would not be barred until May 5, 1997, or two years after the Wisconsin Department of Child Support has ceased to provide assistance to the child. According to the petition filed by the State of Wisconsin, public assistance for Jason had not ceased at the point in time when the petition was filed. Moreover, this action brought by the State *"ex rel.,"* or on relation of Jason's mother, seeks to find respondent liable for the support, education, maintenance, and welfare of Jason and is therefore to be construed as one brought on behalf of the child within the meaning of the Illinois Parentage Act of 1984. (*People ex rel. Todd v. Harvey* (1987), 154 Ill. App. 3d 296, 300, 507 N.E.2d 110, 113.) For purposes of our analysis of the issue presented in this appeal, we will assume that the applicable limitations date under the Illinois Parentage Act of 1984 is May 5, 1997. The narrow issue presented by petitioner for our review is whether the statute of limitations of the Illinois Parentage Act of 1984 may be applied retroactively to the instant paternity action.

By way of introduction, we note that the former Paternity Act was repealed by the Illinois legislature in response to the United States Supreme Court's denunciation of a similar statute in Tennessee and an Illinois Appellate Court decision which held the statute of limitations of the Paternity Act to be unconstitutional. (*Klawitter*

*v. Crawford* (1989), 185 Ill. App. 3d 778, 781-82, 541 N.E.2d 1159, 1161.) The United States Supreme Court held the Tennessee statute with its two-year statute of limitations for paternity actions to be unconstitutional because it denied equal protection to illegitimate children seeking support. (*Pickett v. Brown* (1983), 462 U.S. 1, 18, 76 L. Ed. 2d 372, 386, 103 S. Ct. 2199, 2209.) Subsequently, an Illinois Appellate Court similarly concluded that the Paternity Act violated the equal protection clause of the fourteenth amendment. (*Jude v. Morrissey* (1983), 117 Ill. App. 3d 782, 784, 454 N.E.2d 24, 26; accord *People ex rel. McCoy v. Sherman* (1984), 123 Ill. App. 3d 444, 462 N.E.2d 817.) We also note that the appellate court in *Jude* reversed the dismissal by the lower court of plaintiff's complaint for failure to file within the applicable two-year limitations period.

Our supreme court also pronounced the two-year statute of limitations provision of the Paternity Act unconstitutional but found the remainder of the Act to be severable from the limitations provisions and therefore valid. (*Dornfeld v. Julian* (1984), 104 Ill. 2d 261, 266, 472 N.E.2d 431, 433.) Cases pending on appeal after *Pickett v. Brown* but before the July 1, 1985, effective date of the Illinois Parentage Act of 1984 have consistently held that it was error to dismiss complaints filed more than two years from the birth of the child, reasoning that dismissal would abrogate the expressed intent of the legislature made apparent within the new act, and that it would be judicially inefficient to dismiss the cause only to have it reinstated under the greatly extended limitation period of the new act. (See *Dornfeld v. Julian*, 104 Ill. 2d at 267, 472 N.E.2d at 433; *People ex rel. Moore v. McIntosh* (1985), 134 Ill. App. 3d 1070, 1073-74, 481 N.E.2d 833, 835; *cf. People ex rel. Kelly v. Pasko* (1989), 184 Ill. App. 3d 528, 540 N.E.2d 462 (plaintiff's action filed August 15, 1983, six years after the birth of the child, not barred by statute of limitations; policy articulated by court in *Dornfeld* is controlling).) It is clear from the above review of case law addressing dismissal of paternity actions after *Pickett v. Brown* that the two-year statute of limitations would no longer be applicable.

Respondent argued to the trial court, however, that retroactive application of the statute of limitations provision of the Illinois Parentage Act of 1984 violated his due process rights by attempting to revive a previously barred cause of action. Respondent also argues on appeal that none of the cases holding that the two-year statute of limitations was unconstitutional and therefore inapplicable to matters pending after *Pickett v. Brown* addressed the conflict be-

tween their holding and the long-standing rule under Illinois law against reviving previously barred causes of action. Respondent cites *Board of Education v. Blodgett* (1895), 155 Ill. 441, 40 N.E. 1025, and its progeny for the proposition that a limitations defense which has fully accrued vests a property right in the defendant entitled to due process protection. The Illinois Supreme Court held in *Blodgett* that the legislation at issue which extended a statute of limitations for the collection by a bondholder of the consideration paid for bonds illegally issued by a school district, for an additional year after the date of the amendatory act, was unconstitutional and invalid. The court observed that the statute conflicted with the rule that when the bar of a statute of limitations has become complete by the running of the full statutory period, the right to plead the statute as a defense is a vested right, which cannot be destroyed by legislation, since it is protected therefrom by the State constitutional protection that "no person shall be deprived of life, liberty or property without due process of law." *Blodgett*, 155 Ill. at 446, 40 N.E. at 1026.

The court expressly rejected in *Blodgett* the reasoning of a divided United States Supreme Court in the decision *Campbell v. Holt* (1885), 115 U.S. 620, 29 L. Ed. 483, 6 S. Ct. 209, which held that where a statute of limitations runs to bar a remedy but does not operate to affect the right, a defendant acquires no vested interest in the running of the period so that a subsequent legislative enactment which removes the bar does not deprive him of due process under the United States Constitution. The United States Supreme Court distinguished in *Holt* between statutes running against real or personal property, as in the case of adverse possession, where the right and title to the property itself is lost by plaintiff and becomes vested in the defendant, and statutes imposing a procedural bar against pursuit of an otherwise valid claim, such as an action to collect a debt, where the running of the limitations period leaves the underlying right intact. (See *Wilson v. All-Steel, Inc.* (1981), 87 Ill. 2d 28, 41, 428 N.E.2d 489, 494 (discussion of *Holt* decision).) The Illinois Supreme Court noted in *Blodgett*, however:

> "[I]mmunity from prosecution in a suit is as valuable to the one party as the right to the demand or to prosecute the suit is to the other. *** It is a right founded upon a wise and just policy. Statutes of limitation are not only calculated for the repose and peace of society, but to provide against the evils that arise from loss of evidence and the failing memory of witnesses. It is true that a man may plead the statute when

he justly owes the debt for which he is sued; and this has led the court to adopt strict rules of pleading and proof to be observed when the defense of the statute is interposed. But it is, nevertheless, a right given by a just and politic law, and, when vested, is as much to be protected as any other right that a man has." (*Blodgett*, 155 Ill. at 449-50, 40 N.E. at 1025.)

The *Blodgett* decision has consistently been cited with approval by Illinois courts. *Wilson*, 87 Ill. 2d at 41, 428 N.E.2d at 495.

Notwithstanding whatever authority may be provided by the *Holt* decision for the validity of the legislature's repeal of the two-year statute of limitations in the prior Paternity Act and extension to the 20-year limitations period stated in the Illinois Parentage Act of 1984, Illinois courts have implied that in certain cases, the legislature can constitutionally revive a previously barred statutorily created remedy, provided the legislature expressly indicates that intention. (See *Arnold Engineering, Inc. v. Industrial Comm'n* (1978), 72 Ill. 2d 161, 167, 380 N.E.2d 782, citing *People v. Lansing* (1966), 35 Ill. 2d 247, 250, 220 N.E.2d 218; *cf. Johnston v. Tri-City Blacktop, Inc.* (1991), 217 Ill. App. 3d 388, 392, 577 N.E.2d 529 ("subsequent legislation extending the statute of limitations should not be applied retroactively to revive a time-barred cause of action unless the legislature indicates otherwise").) However, in none of the above-cited cases did the court determine that the applicable statute of limitations could be retroactively applied so as to revive a claim, action or proceeding which had been barred by the running of a previous limitations period, because there was nothing in the language of the new statute to indicate an express intention to revive the claim, action or proceeding or make retroactive the new statute of limitations.

■ We note that unlike the legislation discussed in the *Arnold Engineering, Lansing* and *Johnston* cases, the Illinois Parentage Act of 1984 contains a savings clause which we find satisfies the requisite showing of intent on the part of the legislature to revive a previously barred statutorily created remedy. Section 25 of the Illinois Parentage Act of 1984 provides:

"Except as provided in Section 8 of this Act, the repeal of the 'Paternity Act', approved July 5, 1957, as amended, shall not affect rights or liabilities which have accrued thereunder and which have been determined, settled or adjudicated prior to the effective date of this Act or which are the subject of proceedings pending thereunder on such effective date. Pro-

vided further, this Act shall not be construed to bar an action which would have been barred because the action had not been filed within the then applicable time limitation, or which could not have been maintained under the 'Paternity Act,' approved July 5, 1957 and repealed hereunder, as long as the limitations periods set forth in Section 8 of this Act are complied with." (Ill. Rev. Stat. 1989, ch. 40, par. 2525.) In our opinion, the above-stated language clearly expresses an intent on the part of the legislature when it drafted the Illinois Parentage Act of 1984 that the new limitations period for the filing of a paternity action would be retroactively applied and could revive an action which had been previously barred. Additionally, because the two-year statute of limitations was found to be unconstitutional by our supreme court, it is void *ab initio* and confers no rights, imposes no duties, and affords no protections. (*Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595, 605, 394 N.E.2d 1291, 1299.) Therefore, defendant has no vested property right in the two-year statute of limitations. We therefore find that the trial court erred in holding that the completed bar of the prior Paternity Act's statute of limitations could not be destroyed by the Illinois Parentage Act of 1984, consistently with respondent's due process rights.

■ We also note that unlike the claims, actions and proceedings involved in the *Arnold Engineering, Lansing,* and *Johnston* cases which dealt with rights personal to the party or claimant, the purpose of a paternity action is to convert a father's moral obligation to support his illegitimate children into a legal obligation and to prevent such children from becoming public charges. (*Dornfeld v. Julian,* 104 Ill. 2d at 266, 472 N.E.2d at 433; *People ex rel. Lampkin v. Brown* (1980), 81 Ill. App. 3d 869, 873, 401 N.E.2d 1171, 1174.) The Illinois Parentage Act of 1984 declared it to be the public policy of Illinois to recognize the right of every child to the physical, mental, emotional, and monetary support of his or her parent. (*Klawitter v. Crawford* (1989), 185 Ill. App. 3d 778, 783, 541 N.E.2d 1159, 1163.) Thus, because the rights of the child are also involved, the same due process concerns so eloquently expressed by the supreme court in *Blodgett* are not present with respect to respondent's obligation to his son, if paternity is so proven, and do not compel a determination that the limitations period of the Illinois Parentage Act of 1984 may not be retroactively applied.

Respondent insists, however, that the 14-year delay in filing the paternity action in the instant case will hamper his ability to pro-

duce evidence and witnesses who can credibly support his denial of paternity. We note that section 11 of the Illinois Parentage Act of 1984 provides that either party to a paternity action may request blood testing for the mother, child or alleged father to determine inherited characteristics, including, but not limited to, blood types and genetic markers such as those found by human leucocyte antigen (HLA) tests and that any party may demand that other experts, qualified as examiners of blood or tissue types, may perform independent tests under order of court, the results of which may be offered in evidence. (Ill. Rev. Stat. 1991, ch. 40, pars. 2511(a), (c).) Moreover, this section of the Illinois Parentage Act of 1984 outlines the evidentiary relevance of such test results:

"(1) If the court finds that the conclusion of all the experts, as disclosed by the evidence based upon the tests, is that the alleged father is not the parent of the child, the question of paternity shall be resolved accordingly.

(2) If the experts disagree in their findings or conclusions, the question shall be weighed with other competent evidence of paternity.

(3) If the blood or tissue tests show that the alleged father is not excluded and that the combined paternity index is less than 500 to 1, this evidence shall be admitted by the court and shall be weighed with other competent evidence of paternity.

(4) If the blood or tissue tests show that the alleged father is not excluded and combined paternity index is at least 500 to 1, the alleged father is presumed to be the father, and this evidence shall be admitted. This presumption may be rebutted by clear and convincing evidence." (Ill. Rev. Stat. 1991, ch. 40, par. 2511(f).)

Justice O'Connor noted in her concurring opinion in *Mills v. Habluetzel* (1982), 456 U.S. 91, 71 L. Ed. 2d 770, 102 S. Ct. 1549, that recent scientific developments in blood testing have dramatically reduced the possibility that a defendant will be falsely accused of being the illegitimate child's father and, in discussing the constitutionality of the State's one-year statute of limitations, so concluded that the State's concern about stale and fraudulent claims is substantially alleviated. (*Mills v. Habluetzel*, 456 U.S. at 104 n.2, 71 L. Ed. 2d at 781 n.2, 102 S. Ct. at 1557 n.2 (O'Connor, J., concurring, joined by Burger, C.J., and Brennan and Blackmun, JJ.).) It is apparent that with the advent of such conclusive blood- and genetic-testing methods, whose utilization is sanctioned by the Illinois Par-

entage Act of 1984, respondent is not unduly prejudiced by the extended statute of limitations.

We note that the Illinois Parentage Act of 1984 as originally enacted provided that upon a showing by the defendant that unreasonable delay in bringing the action has unduly prejudiced the defendant, the court, after deliberating over all the circumstances, including equitable considerations, may dismiss the cause of action. (See Ill. Rev. Stat. 1985, ch. 40, par. 2508(b).) However, this provision was deleted from section 8 of the Illinois Parentage Act of 1984 by Public Act 84—848, section 1, effective September 23, 1985, and the current act as amended includes no comparable provision. We also note that this court rejected a related contention prior to the effective date of the act, that a paternity action brought 14 years after the child's birth should have been dismissed under the equitable doctrine of *laches*, because there was no indication in the prior act that this doctrine should be applicable and because application of the doctrine of *laches* could adversely affect the statutory purpose of providing for support of illegitimate children. (*People ex rel. Reeder v. Reeder* (1985), 131 Ill. App. 3d 841, 845, 476 N.E.2d 50, 52; accord *People ex rel. McCoy v. Sherman* (1984), 123 Ill. App. 3d 444, 462 N.E.2d 817.) The Illinois Parentage Act of 1984, as amended by Public Act 84—848, section 1, also shows no legislative intent that this equitable doctrine may apply, and we similarly believe that application of the doctrine of *laches* would thwart the stated public policy of the act, to recognize the right of every child to the physical, mental, emotional, and monetary support of his or her parent. We must therefore reject respondent's contention that there are any legal or equitable considerations which should bar this paternity action filed 14 years after the birth of his alleged son. We hold that the trial court erred as a matter of law in dismissing the paternity petition filed in the instant case as barred by the statute of limitations of the prior Paternity Act.

Accordingly, we reverse the March 15, 1991, and April 15, 1991, orders of the circuit court of Jackson County and remand this cause for further proceedings consistent with our decision in this appeal.

Reversed and remanded.

CHAPMAN, P.J., and GOLDENHERSH, J., concur.