2023 IL App (1st) 210774
No. 1-21-0774
Opinion filed March 10, 2023

SIXTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* PARENTAGE OF DARYL MILLER, an Adult, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| (Daryl Miller, | ) ) | No. 2019 D 79138 |
| Petitioner-Appellant, | ) ) | The Honorable Edward Arce, |
| v. | ) ) | Judge, presiding. |
| George Guy, | ) ) | |
| Respondent-Appellee). | ) | |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Tailor concurred in the judgment and
opinion.

**OPINION**

¶ 1    Daryl Miller filed a petition under the Illinois Parentage Act of 2015 (2015 Act) 750

ILCS 46/101 *et seq.* (West 2018)) to establish that George Guy is his biological father. The

trial court granted Guy's motion to dismiss pursuant to section 2-619(a) of the Code of Civil

Procedure (Code) (735 ILCS 5/2-619(a) (West 2018)), which permits a respondent, within the

time permitted for pleading, to move for dismissal based upon certain defects or defenses as

determined by the underlying facts. Guy challenged the application of section 607 of the 2015

Act which provides, in relevant part, that "[a] proceeding to adjudicate the parentage of a child *** may be commenced at any time" by the child. 750 ILCS 46/607(a) (West 2018). The trial court found that, as applied to Guy, the application of the statute was unconstitutional under the Illinois due process clause (Ill. Const. 1970, art. I, § 2) and accordingly dismissed the petition. For the following reason, we reverse.

¶ 2                                    BACKGROUND

¶ 3         The respondent, Guy, is a world-renowned blues musician popularly known as Buddy Guy.

¶ 4         On February 8, 2019, Miller filed the *pro se* petition at issue, seeking to legally establish Guy's paternity. At the time of the filing, Miller was 59 years old and Guy was 83 years old. In his brief to this court, Guy asserts that "Miller knew that Guy was his father" when Miller was introduced, at the age of 7 or 8 years old, to Guy by Miller's mother and told then that Guy was his " 'daddy.' "

¶ 5         Since on a motion to dismiss all well-pleaded facts must be taken as true,[1] we provide, in their entirety, the facts alleged in Miller's *pro se* petition:

        "1. The petitioner, Daryl Miller was born May 6, 1960, in Chicago, Illinois.

        2. The natural mother of Daryl Miller is Joyce Dean Miller.

        3. Joyce Dean Miller was not married at the time of the birth or conception of Daryl Miller.

---

[1]In ruling on a section 2-619 motion to dismiss, "a court must accept as true all well-pled facts in the plaintiff's complaint and any reasonable inferences that arise from those facts." *Hernandez v. Lifeline Ambulance LLC*, 2020 IL 124610, ¶ 14.

4. No man is presumed, adjudicated, or acknowledged as Daryl Miller's legal father.

5. Joyce Dean Miller and George Guy had sexual relations during the period of time Daryl Miller was conceived.

6. The parties have taken a chain-of-custody genetic paternity test which indicates that George Guy cannot be excluded as the biological father of Daryl Miller. Attached and marked as 'Exhibit A' is a copy of the genetic paternity test results dated January 4, 2018.

7. Pursuant to 750 ILCS 46/607 [(West 2016)], a [']proceeding to adjudicate the parentage of a child having no presumed, acknowledged, or adjudicated parent may be commenced at any time, even after: (a) the child becomes an adult, but only if the child initiates the proceeding ***.'

8. Daryl Miller, the adult child of George Guy, initiates this proceeding in accordance with 750 ILCS 46/607 [(West 2016)].

9. Daryl Miller seeks to establish George Guy—who is Daryl's biological father— as Daryl's legal father."

Miller filed his 2019 petition under the 2015 Act, which took effect on January 1, 2016. 750 ILCS 46/101 (West 2016) ("This Act may be cited as the Illinois Parentage Act of 2015.").

¶ 6 Attached as an exhibit to Miller's petition was the result of a paternity test. The test result, dated January 4, 2018, states that "the probability of [Guy's] paternity is 99.9999%, as compared to an untested, unrelated man of the Black population."

¶ 7 For relief, Miller's petition seeks (1) an order of parentage declaring Guy to be his "legal father," (2) an order that "the Illinois Department of Healthcare and Family Services—

Division of Vital Records update its records accordingly," and (3) "any further relief [that] the Court deems reasonable and just." The petition does not seek money. The appellate record consists entirely of briefs, exhibits, and pleadings; there are no transcripts of proceedings.

¶ 8        In his answer, filed on June 10, 2019, Guy did not raise as an affirmative defense either that Miller's petition was time-barred or that the applicable statute was unconstitutional as applied to him. In his answer, Guy "admit[ed] that he gave biological materials to" Miller but asserted that he lacked sufficient knowledge to admit or deny Miller's other allegations. In a request to admit, Miller asked Guy to "Admit or deny that you denied being the father of the Petitioner before the DNA results determined that you are the biological father." In a response, dated September 26, 2019, Guy stated that he "objects to this request to admit as it seeks information subject to expert opinions." On February 13, 2020, Miller, now represented by an attorney, moved to compel DNA testing by "the Cook County DNA lab."

¶ 9        On May 8, 2020, almost a year after filing his answer, Guy moved to withdraw his answer and to file *instanter* a motion to dismiss pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018) (permitting dismissal based on an "affirmative matter" that defeats the claim) on the ground that Miller's petition was time barred and that section 607 of the 2015 Act (750 ILCS 46/607 (West 2018)) was unconstitutional as applied to him.

¶ 10        In his motion, Guy argued that Miller's petition was time-barred under the statute of limitation in the Illinois Parentage Act of 1984 (1984 Act) (Ill. Rev. Stat., 1985, ch. 40, ¶ 2508). Guy acknowledged that the Illinois legislature had passed a different parentage act in the late 1950s, which would have been in effect when Miller was born in 1960 (hereinafter referred to

as the 1958 Act (see 1957 Ill. Laws 1035)).[2] However, Guy argued that the statute of limitations in the 1958 Act was found unconstitutional in 1984, when Miller was 24 years old. In support, Guy cited *Dornfeld v. Julian*, 104 Ill. 2d 261, 264-65 (1984), in which our supreme court found that the 1958 Act's two-year limit, as counted from the child's birth, was unconstitutional because it denied equal protection to children born of unwed parents in obtaining paternal support. Our supreme court invalidated the statute of limitation in the 1958 Act but found the rest of the 1958 Act constitutional. *Dornfield*, 104 Ill. 2d at 266. This finding had limited practical effect since the 1958 Act had already been repealed by our legislature, also in 1984. *Dornfield*, 104 Ill. 2d at 267.

¶ 11        As Guy noted, in contrast to the 1958 Act, the 1984 Act permitted suit within two years after the age of majority. *Dornfield*, 104 Ill. 2d at 267; Ill. Rev. Stat., 1985, ch. 40, ¶ 2508. However, by the time the 1984 Act took effect in 1985, the then 25-year old Miller was well past that two-year mark as well and, thus, barred by its express terms.

¶ 12        Guy argued that courts "interpreting the timeliness of parentage actions which could have been brought under" the 1958 Act "have used" the 1984 Act's statute of limitation "which is based on the majority of the child." In support, Guy cited *People ex rel. Moore v. McIntosh*, 134 Ill. App. 3d 1070, 1073-74 (1985), and *People ex rel. Kelly v. Pasko*, 184 Ill. App. 3d 528 (1989), which were both decided before the 1984 Act was repealed in 2015 and replaced by the current act.

---

[2] Although the act took effect on July 5, 1957, Guy's motion refers to it as "the Illinois Parentage Act of 1958." See 1957 Ill. Laws 1035. Other courts have also referenced the year of the act as 1958, so we do the same. *E.g. Klawitter v. Crawford*, 185 Ill. App. 3d 778, 781 (1989) (calling it "the Paternity Act of 1958").

¶ 13    Guy further argued: "Giving generous effect to the [1984 Act's] two-year extension to file a paternity action after reaching the age of majority, the absolute latest point when Miller could have initiated a paternity action was in 1986, at the age of 26, two years after the Act was enacted." Guy's motion before the trial court did not cite cases to support this point but argued that Miller had a window of time, after the 1984 Act was passed, to file a paternity action. Guy argued that the "lapsing of Miller's ability to commence a paternity action under" the 1984 Act "created a protected due process right in the extinguishment of Miller's claims."

¶ 14    In response, Miller argued before the trial court that Guy's affirmative defenses, filed a year after Guy's answer, should be deemed waived and that being adjudicated Miller's father would not subject Guy "to money damages or loss of property, let alone his life or liberty," as the due process clause requires.

¶ 15    On August 27, 2020, the trial court set a hearing date of October 2, 2020, on Guy's motion to withdraw his prior answer and to file a motion to dismiss. However, there is no indication that a hearing was held at that time, and the record does not contain an order regarding Guy's motion to withdraw his prior answer.

¶ 16    Issuing an order on the court's own motion, the trial court observed that, although Guy had moved to dismiss on constitutional grounds, the court could find no indication in the record that Guy had notified the Illinois Attorney General, as required by Illinois Supreme Court Rule 19 (eff. Sept. 1, 2006)[3] of his constitutional challenge to an Illinois statute. In its order dated December 23, 2020, the trial court ordered Guy's attorney to provide notice as required by Rule 19. On January 15, 2021, the Illinois Attorney General entered an appearance in the case,

[3]Rule 19 provides, in relevant part, that "[i]n any cause or proceeding in which the constitutionality *** of a statute *** is raised, *** the litigant raising the constitutional *** issue shall serve an appropriate notice thereof on the Attorney General." Ill. S. Ct. R. 19(a) (eff. Sept. 1, 2006).

and the trial court granted the Attorney General leave to intervene in the case and to file a response to Guy's motion to dismiss. The court's order, dated January 15, 2021, set a hearing for April 22, 2021, on Guy's motion to dismiss and Miller's motion to compel a DNA test.[4] The hearing was later rescheduled to May 7, 2021, for oral argument and to June 2, 2021, for the court's ruling.

¶ 17     On June 2, 2021, the trial court issued a memorandum order finding that "Section 904 of the Parentage Act of 2015 [(750 ILCS 46/904 (West 2018))] is unconstitutional under Article 1, Section 2 of the Illinois Constitution as applied to George Guy."[5] The trial court granted Guy's motion to dismiss and stated that its order was "a final and appealable order." Within 30 days, Miller filed a timely notice of appeal on July 1, 2021.

¶ 18     After various extensions and the completion of briefing, this court held oral argument on November 3, 2022, where the issues were vigorously argued and further refined. On November 10, 2022, this court issued an order stating that, "[i]n light of the issues discussed at oral argument," supplemental briefing was needed

> "on the limited questions of (1) whether there was a moment in time when the law permitted Daryl Miller to file a paternity petition prior to the passage of the Illinois Parentage Act of 2015, and (2) the relevance of *Wilson v. All-Steel, Inc.*, 87 Ill. 2d 28, 40-42 (1981) to Guy's claimed property interest under the due process clause."

---

[4]On February 16, 2021, the Attorney General filed a response in opposition to Guy's motion to dismiss on constitutional grounds. Guy filed a reply, and the Attorney General filed a supplemental response. On April 7, 2021, Guy was granted leave to file a reply to the Attorney General's supplemental response, which he did.

[5]Although the trial court had found section 904 unconstitutional, Guy had moved to dismiss on the ground that section 607 of the 2015 Act was unconstitutional. Guy had argued that section 607, when viewed "in conjunction with" section 904, was unconstitutional and that either provision could be struck without affecting the other provisions.

Both parties complied, and further consideration of this appeal followed.

¶ 19                                                    ANALYSIS

¶ 20                                                I. Section 2-619

¶ 21        The trial court dismissed petitioner's complaint pursuant to section 2-619 of the Code. "A motion to dismiss, pursuant to section 2-619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). "[T]he movant is essentially saying ' "Yes, the complaint was legally sufficient, but an affirmative matter exists that defeats the claim." ' " *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31 (quoting *Winters v. Wangler*, 386 Ill. App. 3d 788, 792 (2008)). Dismissal is permitted based on certain listed "defects" (735 ILCS 5/2-619(a)(1)-(8) (West 2018)) or some "other affirmative matter" (735 ILCS 5/2-619(a)(9) (West 2018)) outside the complaint. *Reynolds*, 2013 IL App (4th) 120139, ¶ 31.

¶ 22        With a section 2-619 dismissal, our standard of review is *de novo*. *Hernandez v. Lifeline Ambulance LLC*, 2020 IL 124610, ¶ 14; *Solaia Technology*, 221 Ill. 2d at 579. *De novo* review means that we perform the same analysis a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). "Under the *de novo* standard of review, this court owes no deference to the trial court." *People v. Williams*, 2013 IL App (1st) 111116, ¶ 75 (citing *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007)).

¶ 23        In ruling on a section 2-619 motion to dismiss, a court must interpret the pleadings and supporting materials in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003). "[A] court must accept as true all well-pled facts

in the plaintiff's complaint and any reasonable inferences that arise from those facts." *Hernandez*, 2020 IL 124610, ¶ 14.

¶ 24    "For a motion to be properly brought under section 2-619, the motion (1) must be filed 'within the time for pleading' and (2) must concern one of the nine listed grounds." *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 35 (quoting 735 ILCS 5/2-619(a) (West 2018)). In the case at bar, Miller challenged the timeliness of Guy's motion in the court below but chose not to challenge the timeliness of the motion on this appeal. Thus, we do not consider this issue on appeal. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 25    In addition, a section 2-619 motion is permitted only on the following grounds:

"(1) That the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having jurisdiction.

(2) That the plaintiff does not have legal capacity to sue or that the defendant does not have legal capacity to be sued.

(3) That there is another action pending between the same parties for the same cause.

(4) That the cause of action is barred by a prior judgment.

(5) That the action was not commenced within the time limited by law.

(6) That the claim set forth in the plaintiff's pleading has been released, satisfied of record, or discharged in bankruptcy.

(7) That the claim asserted is unenforceable under the provisions of the Statute of Frauds.

(8) That the claim asserted against defendant is unenforceable because of his or her minority or other disability.

(9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a) (West 2018).

¶ 26    In the case at bar, Guy alleged that Miller's petition was untimely and that he had acquired a vested right in the expiration of Miller's claim which was a constitutionally cognizable due process right. As noted above, one of the permitted grounds is untimeliness and another is defeat by an affirmative matter. See 735 ILCS 5/2-619(a)(5), (9) (West 2018). "Affirmative matter," in this context, " 'encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action.' " *Daniels v. Union Pacific R.R. Co.*, 388 Ill. App. 3d 850, 855 (2009). Under subsections (a)(5) and (a)(9), defendant's motion regarding timeliness and due process is "the proper subject of a section 2-619 motion, and the burden falls on defendant to prove it." *Khan*, 2021 IL App (1st) 182694, ¶ 38.

¶ 27    "Evidence that merely refutes an ultimate fact pleaded in the plaintiff's complaint is not an affirmative matter and not the proper subject of a section 2-619 motion." *Khan*, 2021 IL App (1st) 182694, ¶ 41; *Reynolds*, 2013 IL App (4th) 120139, ¶ 34. "If a defendant wants to rebut a complaint's essential factual allegations, the proper vehicle is a summary judgment motion, not a section 2-619 motion." *Khan*, 2021 IL App (1st) 182694, ¶ 41; *Reynolds*, 2013 IL App (4th) 120139, ¶ 34. Here, Guy does not dispute paternity, but instead attacks timeliness and constitutionality. Thus, for the purposes of this motion, we accept that Guy is Miller's biological father.

¶ 28                                    II. The 2015 Act

¶ 29        The trial court found that section 904 of the 2015 Act was unconstitutional as applied

to Guy. Section 904, which is entitled the "Savings provision," provides in full:

> "The repeal of the [1984 Act] shall not affect rights or liabilities under that Act which
>
> have been determined, settled, or adjudicated prior to the effective date of this Act. This
>
> Act shall not be construed to bar an action which would have been barred because the
>
> action had not been filed within a time limitation under the [1984 Act], or which could
>
> not have been maintained under that Act, as long as the action is not barred by a
>
> limitations period set forth in this Act." 750 ILCS 46/904 (West 2018).

¶ 30        The last sentence of section 904 refers to the "limitations period set forth in this Act."

750 ILCS 46/904 (West 2018). The limitations period for a suit initiated by a child, such as the

one in the case at bar, is set forth in section 607, and that section is titled, quite clearly, "[n]o

limitation."[6] Section 607 of the 2015 Act provides in full:

> "A proceeding to adjudicate the parentage of a child having no presumed,
>
> acknowledged, or adjudicated parent may be commenced at any time, even after:
>
>     (a) the child becomes an adult, but only if the child initiates the proceeding; or
>
>     (b) an earlier proceeding to adjudicate parentage has been dismissed based on the
>
> application of a statute of limitations then in effect." 705 ILCS 46/607 (West 2018).

¶ 31        There is no dispute on this appeal that the express words of the 2015 Act authorize the

suit at bar.

¶ 32                                  III. Due Process Claim

---

[6]The entire title is "No limitation; child having no presumed, acknowledged, or adjudicated parent." 750 ILCS 46/607 (West 2018).

¶ 33    A reviewing court starts with the presumption that a statute is constitutional, and the burden is on the party challenging it to establish any constitutional invalidity. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 334 (2006). "The burden is a formidable one, and this court will uphold a statute's validity whenever it is reasonably possible to do so." *Allegis*, 223 Ill. 2d at 334. Whether a statute is constitutional is an issue that we review *de novo*. *Allegis*, 223 Ill. 2d at 334.

¶ 34    Guy argues (1) that Miller had the right to file a paternity claim in 1985, when the 1984 Act took effect, and during the two years thereafter; (2) that, when Miller did not file a claim between 1985 and 1987, Guy obtained a vested interest in 1987 in the expiration of Miller's paternity claim; and (3) that the 2015 Act deprived Guy of this interest.

¶ 35    Guy does not argue that he had a financial or monetary interest in denying that he fathered Miller but rather that he had intangible property interest, that the Illinois due process clause protects such an interest, and that, by depriving him of that interest, the 2015 Act is unconstitutional as applied to him.

¶ 36    Guy's argument entails a two-part analysis. First, we must determine whether Miller had a right to sue under the 1984 Act that was extinguished by the 1984 Act's statute of limitations. If the answer to that question is yes, then, and only then, may we proceed to the constitutional issue of whether the right that Guy claims is protected by the due process clause.

¶ 37    We may proceed to the constitutional issues only if it is absolutely necessary to do so, and for the reasons explained below, we find that it is not necessary in this case. See *In re E.H.*, 224 Ill. 2d 172, 178 (2006) ("cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort"); *People v. Hampton*, 225 Ill. 2d 238, 244 (2007) ("Constitutional issues should be addressed only if necessary to decide a

12

case.") Before we reach the constitutional question, we must first determine whether the words of the 1984 Act gave Miller a right to sue that was then extinguished by its statute of limitations. We find that the 1984 Act did not give Miller a right to sue.

¶ 38                                 IV. The 1984 Act

¶ 39        With statutory interpretation, our primary goal is to ascertain and give effect to the intent of the statute's drafters. *VC&M, Ltd. v. Andrews*, 2013 IL 114445, ¶ 30. The most reliable indicator of the drafters' intent is the language they chose to use in the statute itself. *VC&M, Ltd.*, 2013 IL 114445, ¶ 30. When reading the language of the statute, we give the words their plain and ordinary meaning, *VC&M, Ltd.*, 2013 IL 114445, ¶ 30.

¶ 40        The 1984 Act provides in relevant part that "[a]n action brought by *** a child shall be barred if brought later than 2 years after the child reaches the age of majority." Ill. Rev. Stat. 1985, ch. 40, ¶ 2508(a)(1). Thus, under the express words of the 1984 Act, Miller would have been "barred" from bringing an action in 1985 because such an action would have been more than "2 years after the child reaches the age of majority." Ill. Rev. Stat. 1985, ch. 40, ¶ 2508(a)(1).

¶ 41        The "savings" clause of the 1984 Act did not save Miller's right to sue under the 1984 Act. See Ill. Rev. Stat. 1985, ch. 40, ¶ 2525. This clause stated, in relevant part, that "this Act shall not be construed to bar an action which would have been barred because the action had not been filed within the then applicable time limitation *** *as long as the limitations periods set forth in Section 8 of this Act are complied with*." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 40, ¶ 2525; *Klawitter v. Crawford*, 185 Ill. App. 3d 778, 786 (1989) ("We believe that the language in the savings provision (section 25) is clear that the provisions of section 8 must be met."). Thus, even under the savings clause, Miller could not sue because the savings clause

still required compliance with section 8, and section 8, quoted above, required suit to be brought no "later than 2 years after the child reaches the age of majority." Ill. Rev. Stat. 1985, ch. 40, ¶ 2508(a)(1). In sum, under the plain language of section 8, which set forth the statute of limitations, and the plain language of the savings clause, which insisted on compliance with section 8, Miller was "barred" from bringing an action in 1985 because it would have been more "than 2 years after" he "reache[d] the age of majority." See Ill. Rev. Stat. 1985, ch. 40, ¶ 2508(a)(1).

¶ 42                                    V. Right to Sue

¶ 43        As shown above, Miller never had a claim under the 1984 Act—rather he *may* have had a claim under an equitable extension that the courts *may* have found, depending on when he sued, that was then cut off—not by the statute of limitations—but by the ending of a possible equitable extension. See *Klawitter*, 185 Ill. App. 3d at 787 (a father suing for visitation rights did not sue within a reasonable period of time where he filed 11 months after the 1984 Act took effect and he had had 3½ years to file under other provisions); *M.E.H. v. L.H.*, 177 Ill. 2d 207, 219 (1997) (sex abuse victims did not sue within a reasonable period of time after a new statute took effect).[7] However, the possibility of an equitable extension is not the same as a statute of limitations. No rights or vested interests are conferred by a mere possibility.

¶ 44        None of the cases cited by Guy in his supplemental brief or in his original appellate brief stand for what he asks us to find here, namely, that Miller had a definite and express right to sue from 1985 to 1987 under the 1984 Act.[8] For example, in *Klawitter*, the appellate court

---

[7]The *Pasko* case, cited by Guy, is inapposite to this question of whether a court would have found an equitable extension in our case. Since the *Pasko* child was only eight years old when the 1984 Act took effect, no extension of its statute of limitations was necessary. See *Pasko*, 184 Ill. App. 3d at 529.

[8]The first line of Guy's supplemental brief to this court argues: "Daryl Miller was legally permitted to file his paternity petition from 1985 until 1987 pursuant to the Parentage Act of 1984."

found that a father suing for visitation rights did *not* have a right to sue under the 1984 Act. *Klawitter*, 185 Ill. App. 3d at 787. Prior to the 1984 Act, fathers seeking to establish paternity could "seek relief under the Illinois Marriage and Dissolution of Marriage Act [(Ill. Rev. Stat. 1985, ch. 40, ¶ 101 *et seq.*)]," which set no time limit for their suit. *Klawitter*, 185 Ill. App. 3d at 781. However, section 8 of the 1984 Act, the statute-of-limitations section discussed above, limited the suits of putative fathers to suits within two years after the child's birth. *Klawitter*, 185 Ill. App. 3d at 781. The *Klawitter* court found, as we did, that the 1984 Act was clear and unambiguous in its requirement that the statute of limitation set forth in section 8 "must be met." *Klawitter*, 185 Ill. App. 3d at 786.

¶ 45        In *dicta*, the court expressed sympathy for the father's argument that a new statute should not be "retroactively applied so as to instantaneously terminate a cause of action." *Klawitter*, 185 Ill. App. 3d at 786. However, the problem noted in *Klawitter* did not happen in our case: Miller did not have a prior cause of action that was instantly terminated by the 1984 Act. Although sympathetic to the plaintiff father, the *Klawitter* court still found that relaxation of the rule was not warranted in the case before it, where the father waited "11 months after [the 1984 Act] became effective." *Klawitter*, 185 Ill. App. 3d at 787. The bottom line in *Klawitter* is that no equitable right to sue was found.[9]

¶ 46        As in *Klawitter*, the court in *In re Marriage of Ingram*, 176 Ill. App. 3d 413, 419-20 (1988), found no equitable right by a parent to bring a paternity action outside the statute of limitation set forth in section 8. The *Ingram* court noted the "general" equitable rule that an act "shortening a statute of limitations will not be retroactively applied so as to terminate a cause

---

[9]The same was true in other suits by alleged fathers cited by *Klawitter*. As the *Klawitter* court observed: "In each case, the trial court dismissed the petition to establish paternity as barred by the statute of limitations under the Illinois Parentage Act of 1984." *Klawitter*, 185 Ill. App. 3d at 787 (citing *Majidi v. Palmer*, 175 Ill. App. 3d 679 (1988), and *McDonald v. McGowan*, 163 Ill. App. 3d 697 (1987)).

of action" without first giving the affected party "a reasonable period of time *** to file an action." *Ingram*, 176 Ill. App. 3d at 419. However, as we noted above, that is simply not what happened in this case: the 1984 Act did not "shorten[ ]" a prior statute of limitations; it lengthened it. See *Ingram*, 176 Ill. App. 3d at 419. As a result, the *dicta* is distinguishable, and the holding does not help Guy either. The bottom line in *Ingram*, as it was in *Klawitter*, is that no equitable right to sue was found. *Ingram*, 176 Ill. App. 3d at 419-20.

¶ 47        Guy also cited *McIntosh*, 134 Ill. App. 3d 1070, which hurts his position instead of supporting it. In *McIntosh*, the State sued on March 19, 1983, to establish the paternity of a child born on January 20, 1978. *McIntosh*, 134 Ill. App. 3d at 1072, 1074. At the time that the State filed suit, the child was five years and two months old. *McIntosh*, 134 Ill. App. 3d at 1073. The father argued that the suit against him was barred by the applicable statute of limitations. *McIntosh*, 134 Ill. App. 3d at 1073.

¶ 48        Key to understanding the *McIntosh* case are the facts (1) that the suit was filed under the prior 1958 Act, (2) that the two-year statute of limitations in the 1958 Act had since been found unconstitutional, and (3) that the 1984 Act did not take effect until 1985. *McIntosh*, 134 Ill. App. 3d at 1073-74. The father argued that "the catch-all limitations provision of five years, which applies to 'all civil actions not otherwise provided for' " applied after the statute was found unconstitutional and that, prior to 1985, the lapse of this five-year period had already extinguished the State's right to sue. *McIntosh*, 134 Ill. App. 3d at 1073 (quoting Ill. Rev. Stat. 1983, ch. 110, ¶ 13-205).

¶ 49        The *McIntosh* court rejected the father's five-year statute-of-limitations argument and applied instead the then-governing statute of limitations in the 1984 Act. *McIntosh*, 134 Ill. App. 3d at 1073-74. Unlike the case at bar, no equitable extension of the statute of limitations

16

was needed because the *McIntosh* child was only 7 years old at the time that the 1984 Act took effect. The court stated that "to uphold a dismissal of the instant action for lack of timely filing would abrogate the expressed intent of the legislature made apparent" in the new act. *McIntosh*, 134 Ill. App. 3d at 1073-74. That exact same statement could be made here, with respect to our new act. Neither the *McIntosh* court's holding rejecting the father's argument about an extinguished statute of limitation, nor the court's *dicta* regarding honoring legislative intent, furthers Guy's argument. The holding also does not support his argument for an equitable extension of the 1984's Act statute of limitations since none was needed in that case.

¶ 50     Guy conflates two very different and distinct questions: (1) whether a court would fill in the blanks, created when the 1958 Act's statute of limitations was found unconstitutional, with the 1984 Act's statute of limitations and (2) whether a court would, *in addition*, create a two-year equitable *extension* to the 1984 Act's explicit statute of limitations. Guy has cited no cases whereby someone was allowed to sue by virtue of an equitable extension—let alone one lasting two years. Even if one could be found, that does not mean that an equitable extension, provided in one case and based on its unique facts as equity demands, would create a vested right that anyone could or would rely on, as Guy claims. *Klawitter*, 185 Ill. App. 3d at 787 ("Courts look to the facts of each case for a determination of what constitutes a reasonable time," and 11 months after the effective date of the 1984 Act was not reasonable in this case.); *Majidi v. Palmer*, 175 Ill. App. 3d 679, 684 (1988) ("[w]hat constitutes a reasonable time will depend on the facts of each case," and 20 months after the effective date of the 1984 Act was not reasonable in this case); *Ingram*, 176 Ill. App. 3d at 419 (15 months after the effective date of the 1984 Act was not reasonable in this case).

¶ 51    Since we find that Miller never had an express and definite right to sue under the 1984 Act, there is no need for us to consider any of the constitutional issues that may have flowed from a different finding. Not only is there no need, but if we did consider those constitutional issues, we would run afoul of the repeated directives from our supreme court to refrain from deciding constitutional issues when a case may be decided on other grounds. *E.H.*, 224 Ill. 2d at 178 ("cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort"); *Hampton*, 225 Ill. 2d at 244 ("Constitutional issues should be addressed only if necessary to decide a case."). Put another way, since Miller had no right to sue, then Guy had no property interest in not being sued. Therefore, determining whether the extinguishment of a statute of limitations qualifies as a due-process property right must be left to another day, when a case requires that determination, and this is not that case.

¶ 52                                CONCLUSION

¶ 53    For the foregoing reasons, we find that Miller did *not* have an express and definite right to sue under the 1984 Act that was then extinguished by the 1984 Act's statute of limitations. As a result, Guy gained no vested right or interest, and there is no need to determine whether the alleged right was protected by the due process clause. We reverse the trial court's dismissal and remand for further proceedings consistent with this opinion.

¶ 54    Reversed and remanded.

*In re Parentage of Miller*, **2023 IL App (1st) 210774**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-D-79138; the Hon. Edward Arce, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey R. Esser, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Maureen A. McGuire and Christopher C. Heery, of Anderson, Rasor & Partners, LLP, of Chicago, for appellee. |